# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4297 | **DATE** | 1/16/2002 |
| **CASE TITLE** | Trustees of Chgo Painters... vs. North Ave. Construction Co., Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 2/18/2002 at 9:45 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendant's motion to implead the Union (Doc 8-1, motion for leave to file third-party complaint) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JAN 17 2002 | 13 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED-E03 | | |
| | courtroom deputy's initials SCT | 02 JAN 16 PM 4:05 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS PENSION, HEALTH AND WELFARE, AND DEFERRED SAVINGS PLAN TRUST FUNDS, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 01 C 4297 |
| vs. | ) ) | |
| NORTH AVENUE CONSTRUCTION CO., INC., an Illinois corporation, | ) ) ) | |
| Defendant. | ) ) | |

DOCKETF
JAN 1 7 200

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of North Avenue Construction to implead a party pursuant to Fed. R. Civ. Proc. 14(a). For the reasons set forth below, the motion is granted.

### BACKGROUND

Defendant North Avenue Construction ("North Avenue") is a general contracting firm in Chicago, Illinois. In May and June 2000, North Avenue was working on a project that involved a subcontractor, Naranjo Construction ("Naranjo"). As the work progressed, a representative of the Painters' District Council No. 14 of the International

Brotherhood of Painters and Allied Trades ("the Union") contacted North Avenue to inform them that Naranjo was not making proper pension fund payments to Plaintiff Trustees of the Chicago Painters and Decorators Pension, Health and Welfare and Deferred Savings Plan Trust Funds ("the Funds"). The Union warned North Avenue that the problems with Naranjo could lead to a shutdown of the project.

To avoid the impending shutdown, North Avenue signed a memorandum of agreement with the Union to make payments to the Funds. According to the proposed third-party complaint, the Union representative Dan Goodwin told North Avenue that the payments would have to be made only for Naranjo employees working on the specific project, which ended in June 2000. The Funds, however, expected payments for all of North Avenue's employees from June to December 2000 and brought this suit to recover the difference.

North Avenue now seeks to implead the Union into the action with the Funds, claiming that any liability it may have for delinquent payments is a direct result of the alleged fraud of the Union in its assurances that North Avenue's contributions would be limited to the Naranjo employees.

## DISCUSSION

Rule 14(a) allows a defendant, as a third-party plaintiff, to implead a person not already a party to the action who "is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." A defendant that files

its third-party complaint more than 10 days after serving its answer must obtain leave to do so. The decision to grant leave is at the discretion of the trial court and depends on factors such as the timeliness of the motion and whether the proposed claim will unduly complicate the existing action. Highlands Ins. Co. v. Lewis Rail Serv. Co., 10 F.3d 1247, 1251 (7th Cir. 1993); Laborers' Pension Fund v. McKinney Construction Corp., 2000 WL 1727779 (N.D. Ill. 2000).

North Avenue filed this motion less than a month after serving their answer. While this is outside the 10-day window, there has been no date set to close discovery, nor have any summary judgment motions been filed. The entry of another party, from the standpoint of timing issues, will not have a significant impact on the existing action.

The Funds do not quibble over the timeliness of the motion; rather they contend that North Avenue's claim cannot be presented to this court under certain doctrines of preemption: the Machinists doctrine, § 301 preemption, and the Garmon doctrine. They also insist that the proposed third-party complaint will bog down a simple collection action in a morass of legal issues. Neither of these bases is sufficient in this case to prevent impleader.

The instant claim does not fall under any of the doctrines upon which the Funds rely. First, the so-called Machinists doctrine, which precludes states from regulating labor situations that Congress intended to be left to the free play of economic forces, is inapplicable to the instant case. See Machinists v. Wisconsin Employment Relations

Comm'n, 427 U.S. 132 (1976). North Avenue does not contest the propriety of the Union's actions in threatening to shut down the project, which would implicate Machinists. Instead, North Avenue takes issue with the Union's behavior vis-à-vis the agreement, an issue solidly within the purview of the federal courts. 29 U.S.C. § 186. Second, § 301 preemption requires only that federal, not state law, apply to cases involving collective bargaining agreements to promote uniformity of decisions in this area. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 406 (1988) ("if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law...is pre-empted and federal labor-law principles...must be employed to resolve the dispute"); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985) ("questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law..."); Talbot v. Robert Matthews Distributing Co., 961 F.2d 654, 661-62 (7th Cir. 1992) (dismissing fraud claim based solely on state law). The last doctrine, first enunciated by the Supreme Court in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236 (1959), is also inapplicable to this case. In Garmon, the Court held that the effective administration of the Labor Management Relations Act ("LMRA") required that the National Labor Relations Board ("NLRB") be allowed to examine whether a particular activity constituted an unfair labor practice under the LMRA before the district courts could be

involved in the resolution of a given dispute. Id. at 244-46. Because the allegedly fraudulent actions of the Union could arguably be an unfair labor practice, the Funds argue that we must allow the NLRB the first crack at North Avenue's claim.

Although the Garmon doctrine does apply to many situations involving alleged frauds by employers or unions, the fraud claim in this case directly involves a collective bargaining agreement. The extent of federal courts' jurisdiction over the meaning or validity of these agreements under § 301 is broadly interpreted. Internat'l Brotherhood of Elec. Workers v. Sign-Craft, Inc., 864 F.2d 499, 502 (7th Cir. 1988). Where collective bargaining agreements are involved, the district courts and the NLRB share concurrent jurisdiction over conduct that could arguably be categorized as an unfair labor practice, and we may hear the case regardless of whether a claim has been filed with the NLRB. Id. at 503.

We turn then to the Funds' argument that the addition of the proposed claim would unnecessarily complicate the case. It is true that the underlying purpose of § 515 of ERISA is to provide funds with quick and efficient means of collecting delinquent funds. Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148, 1151-55 (7th Cir. 1989). The Funds contend that this goal is undermined by introduction of complicated fraud claims that involve only the Union.

We must begin by looking at the nature of North Avenue's claim. In its reply, North Avenue characterizes its complaint as one for fraud in the execution. Fraud in

the execution embraces situations in which one party leads another to believe that the nature of the act in question is something entirely different from what it actually is. Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 774 (9th Cir. 1986). In cases of fraud in the inducement, a party assents to something that it would not have absent the fraud. Id. If an agreement suffers from fraud in the execution, it is void and therefore cannot support a claim for delinquent payments. Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501, 1504-05 (9th Cir. 1984) (holding that defendant could not be liable for pension contributions where he reasonably believed that the agreement he signed was only an application for union membership). Fraudulent inducement, by contrast, makes an agreement voidable, which will not defeat a collection action. Rozay's Transfer, 791 F.2d at 774. North Avenue claims that the terms of the agreement were not what Goodwin represented to them, not that it reasonably believed that the agreement was not one pertaining to payment of pension contributions. These allegations support a claim of fraudulent inducement, not fraud in the execution. Indeed, paragraph 17 of the proposed complaint reads "the Union made the false representations with the intent to induce North Avenue to act by executing the Memorandum Agreement."

An employer may not seek to avoid liability for delinquent contributions by asserting traditional contract defenses such as fraud in the inducement, lack of consideration, course of performance, or oral side agreements against a pension fund.

Gerber Truck, 870 F.2d at 1154. The purposes behind ERISA mandate that employers honor their obligations to pension funds even if those obligations are the product of another party's fraudulent inducement. Id. at 1153. The employer can assert these defenses against the fraudulent party for indemnification or contribution, but the liability for pension contributions remains undisturbed. Laborers' Pension Fund v. Litgen Concrete Cutting & Coring Co., 128 F.R.D. 96, 101 (N.D. Ill. 1989). In this case, the Union and the Funds are separate entities. Any liability the Union may have will not impact on the ability of the Funds to collect whatever delinquency North Avenue owes, and its addition to this action will not unduly complicate the suit from the Funds' perspective.

## CONCLUSION

For the foregoing reasons, North Avenue's motion to implead the Union is granted.

Charles P. Kocoras
United States District Judge

Dated: JAN 1 6 2002